```
                 UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,)
        Plaintiff,       )
                         )
        v.               )    CIVIL ACTION NO. 04-10696-JGD
                         )
$78,990 IN UNITED STATES )
CURRENCY,                )
        Defendant.       )
```

**PLAINTIFF UNITED STATES OF AMERICA'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**PRELIMINARY STATEMENT**

This action arose out of a seizure of $78,990 in United States currency (the "Defendant Currency") on July 25, 2003, from Jose Jaramillo and Peter Kiseskey. On April 5, 2004, the government filed this civil forfeiture action against the Defendant Currency, alleging that it is subject to forfeiture under 21 U.S.C. § 881(a)(6) because it constitutes to money furnished or intended to be furnished in exchange for a controlled substance, and/or money used or intended to be used to facilitate violations of Title 21 of the United States Code. The government moves for summary judgment against the Defendant Currency because there is no genuine issue of material fact requiring a trial regarding the forfeiture of the Defendant Currency.

**STATEMENT OF THE CASE**

**A. Administrative and Judicial Civil Forfeiture Proceedings**

On July 25, 2003, agents of the United States Drug Enforcement Administration ("DEA") seized $78,990 from Jose Jaramillo and Peter Kiseskey during a vehicle stop. DEA began administrative forfeiture proceedings against the Defendant Currency pursuant to 18 U.S.C. § 983, on or about October 23, 2003. Neither Jaramillo nor Kiseskey filed a claim to the currency, but Hiram Rodriguez filed a timely administrative claim.

On April 5, 2004, the United States filed a Complaint for Forfeiture <u>in rem</u> against the Defendant Currency, pursuant to 21 U.S.C. § 881(a)(6), alleging that the currency was intended to be used to pay for narcotics. The District Court (Lindsay, J.) endorsed a Warrant and Monition on April 20, 2004, directing the United States to give notice of the Complaint to any person having an interest in the Defendant Currency. Hiram Rodriguez filed a claim and answer to the complaint on June 14, 2004. No other claims or answers have been filed, and the time to do so has expired.

**B. Facts**

The United States incorporates by reference the attached Statement of Undisputed Facts.

**ARGUMENT**

**SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THERE IS NO ISSUE OF MATERIAL FACT REQUIRING A TRIAL.**

**A. The Standard for Granting Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court should render summary judgment if it concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of establishing "the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986) (quoting Rule 56(c)). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-8, 106 S.Ct. 2505, 2510 (1986) (emphasis in original); See also <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86, 106 S.Ct. 1348, 1355-56 (1986).

Summary judgment is appropriate in civil forfeitures where this standard is met. <u>See</u>, <u>e.g.</u>, <u>United States v. One 1987 Mercedes Benz 300E</u>, 820 F. Supp. 248 (E.D.Va. 1993) (granting summary judgment to government where there was no material issue of fact). Indeed, summary judgment may also be granted where claimant has asserted an affirmative defense, such as innocent ownership. <u>See</u>, <u>e.g.</u>, <u>United States v. One Parcel of Property Located at 755 Forest Road</u>, 985 F.2d 70 (2d Cir. 1993) (rejecting innocent owner defense and affirming summary judgment granted against wife of target of narcotics investigation where narcotics and drug paraphernalia had been found in their shared bedroom); <u>United States v. Property Located at 15 Black Ledge Drive</u>, 897 F.2d 97, 103 (2d Cir. 1990) (rejecting a wife's claim of no knowledge and affirming summary judgment); <u>see also</u> <u>United States v. Premises Known as 717 South Woodward Street</u>, 2 F.3d 529, 533 (3d Cir. 1993) ("It is clear that a claimant's bare denial of knowledge or consent may be insufficient to withstand summary judgment in a forfeiture case.").

Whether there is a genuine issue of fact for trial depends on the substantive law of the underlying case and the evidentiary burdens that law places on each party. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 252-56 (noting that "the judge must view the evidence presented through the prism of the substantive evidentiary burden"); <u>United States v. One Parcel of Real</u>

Property, 904 F.2d 487, 490 (9th Cir. 1990); Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Thus, in the instant case, the summary judgment rules must be "'construed in the light of the statutory law of forfeitures, and particularly the procedural requirements set forth therein.'" United States v. One 56-Foot Motor Yacht Named Tahuna, 702 F.2d 1276, 1281 (9th Cir. 1983) (quoting United States v. One 1975 Mercedes 280S, 590 F.2d 196, 199 (6th Cir. 1978)).

**B. The Burden of Proof**

With the passage of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202 (2000), Congress mandated a fundamental change in the government's initial burden of proof in civil forfeiture actions. CAFRA applies to all forfeiture proceedings commenced on or after August 23, 2000.  Prior to CAFRA, the government had the initial burden of showing probable cause for the forfeiture.  Once the government established probable cause, the burden shifted to the claimant to prove, by a preponderance of the evidence, either that there was no probable cause or that he/she was an "innocent owner."  See United States v. All Assets of GPS Automotive Corp., 66 F.3d 483, 487 (2d Cir. 1995); United States v. Daccarett, 6 F.3d 37, 57 (2d Cir. 1993).  Under CAFRA, however, the government has the burden of first establishing, by a preponderance of the evidence, that the Defendant Properties are forfeitable.  CAFRA

applies to this action because it was commenced after August 23, 2000.  CAFRA does not, however, in any way limit the right of either party to seek summary judgment.  See House Passage of H.R. 1658, Floor Statements, 146 Cong. Rec. H2040-01, 2000 WL 368969 (Cong. Rec.), Proceedings and Debates of the 106th Congress, Second Session, Tuesday, April 11, 2000) ("The bill is not intended to limit the right of either party to bring a motion for summary judgment after the filing of the complaint pursuant to Fed. R. Civ. P. 56(a) or 56(b).").

**C. The Evidence Establishes that the Defendant Property is Forfeitable**.

In order to prevail in a civil forfeiture under 21 U.S.C. § 881(a)(6), the government must prove by a preponderance of the evidence that the money is related to an illegal transaction. United States v. $22,474, 246 F.3d 1212, 1215-16 (9th Cir. 2001). Specifically, the government must show that (1) the subject property is a thing of value; (2) there is illegal activity which renders the seized property subject to forfeiture; and (3) there is a nexus, or connection, between the illegal activity and the seized property.  United States v. $36,634, 103 F.3d 1048 (1st Cir. 1997).  When the government seeks to forfeit money under Section 881(a)(6), the nexus can be shown by demonstrating that the money represented the proceeds of a drug sale or that it was intended to be used in the purchase of drugs.  United States v. $68,000, 927 F.2d 30, 32 (1st Cir. 1991).  Once the government

6

makes this showing, which may be by indirect or circumstantial evidence, the burden shifts to the claimant to show by a preponderance of the evidence that the property is not subject to forfeiture.  <u>United States v. $36,634</u>, 103 F.3d at 1053.

Here, there is ample evidence of a such a connection between the Defendant Currency and the offenses giving rise to forfeiture.  The evidence, as set forth in the Affidavit of United States Drug Enforcement Administration Special Agent Michael O'Shaughnessy (which was filed in connection with the civil Complaint), establishes that the Defendant Currency was furnished or intended to be furnished by a person in exchange for narcotics, in violation of Title 21.  Specifically, the Defendant Currency was intended to be paid in exchange for 263 pounds of marijuana that had previously been delivered.

On July 13, 2003, 263 pounds of marijuana were delivered to Jesus Castillo, after an elaborate series of meetings in northern Massachusetts and New Hampshire.  *See* Statement of Undisputed Facts.  The intended payment price for the marijuana was $79,000.  After the delivery of the marijuana, Hiram Rodriguez (the claimant in this case) and a confidential source of information (CS) met to discuss payment of the $79,000.  In addition to surveillance on Rodriguez, DEA agents also conducted surveillance of other individuals involved with Rodriguez in drug trafficking.  Those individuals included Peter Kiseskey and Jesus Castillo.  On

or about July 25, 2003, agents learned through the CS that the $79,000 payment would be delivered by Castillo. Agents maintained surveillance on all of the parties and observed the money being delivered to individuals in a silver Toyota Tacoma pick-up truck, bearing a New Hampshire license plate. A Massachusetts State Trooper conducted a vehicle stop of the Toyota Tacoma, which was being driven by Kiseskey. Jaramillo was the only passenger in the Toyota Tacoma. During the stop, the trooper found a plastic bag containing a large amount of United States currency. Both Kiseskey and Jaramillo denied ownership of the currency. The currency was found to be $78,990, just ten dollars shy of the $79,000 payment described by the CS.

Further investigation revealed that the CS continued to negotiate with Rodriguez for the delivery of fifteen kilograms of cocaine. During the course of these conversations, Rodriguez attempted to arrange for the delivery of cocaine to CS to be sold on consignment. The CS told Rodriguez that they had to get active soon in order to compensate for their financial losses from Castillo's unpaid debt, that is, the $79,000 which was to be exchanged for the 263 pounds of marijuana, but which was instead seized by DEA (the Defendant Currency). Based on the intercepted conversations between CS and Rodriguez, it is clear that Castillo provided $78,990 as payment for the 263 pounds of marijuana; that Jaramillo and Kiseskey (who denied ownership of the money) were

sent to pick up the payment; and that the $78,990 was intercepted by DEA on July 25, 2003.

Rodriguez has provided no evidence to the contrary. In his Statement Identifying Right or Interest, Rodriguez merely states (through counsel) that "Claimant's status is that of lawful owner of the defendant $78,990." Rodriguez has provided no automatic discovery pursuant to Rule 26. Further, Rodriguez has declined to answer interrogatories propounded to him by the United States, including Interrogatory No. 3, which specifically asks, "Please list all sources for the $78,990, including in your response (a) the person or entity from whom you received the defendant currency, and (b) the manner and amount(s) in which the defendant currency was received." *See* Exhibit 1, United States' First Set of Interrogatories Propounded to Claimant Hiram Rodriguez[1]. Indeed, Rodriguez has provided no discovery whatsoever,[2] and has not raised any objections or applicable privileges. Thus, all of the evidence in the record before this Court indicates, without rebuttal, that the Defendant Currency is subject to forfeiture as money intended for exchange for marijuana.

---

[1] The Exhibits are attached to the Affidavit of Shelbey D. Wright, filed with this Memorandum.

[2] *See* Exhibit 2, letter dated December 21, 2004, reminding counsel of Rodriguez's discovery obligations and requesting responses to the government's interrogatories, and Exhibit 3, letter dated January 6, 2005, requesting a discovery conference pursuant to Local Rule 37.1. To date, neither Rodriguez nor his counsel has responded to either letter.

The United States has demonstrated that there is no material fact in dispute which would require a trial in this case. Even construing all inferences in favor of Rodriguez, the Court can conclude only that Rodriguez is the owner of the currency. Rodriguez does not dispute, however, that the Defendant Currency was intended to purchase marijuana, and offers no alternative explanation at all for the source or intended purpose of the funds. Rather, by contesting the forfeiture, Rodriguez places himself squarely in the middle of the marijuana trafficking conspiracy described in Special Agent O'Shaughnessy's Affidavit. On this record, a trier of fact can only find that the Defendant Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## CONCLUSION

For all the reasons stated above, the court should enter judgment in favor of the government, forfeiting the Defendant Currency to the United States.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ Shelbey D. Wright
     Shelbey D. Wright
     Assistant U.S. Attorney

Dated:   January 18, 2005

CERTIFICATE OF SERVICE

    I certify that I have served a copy of the foregoing upon Steven Hrones, counsel for claimant Hiram Rodriguez.

                                                      /s/ Shelbey D. Wright  
                                                    Shelbey D. Wright  
                                                    Assistant U.S. Attorney

Dated:  January 18, 2005