```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,)
         Plaintiff,      )
                         )
         v.              )    CIVIL ACTION NO. 04-10696-JGD
                         )
$78,990 IN UNITED STATES )
CURRENCY,                )
         Defendant.      )
```

**UNITED STATES' STATEMENT OF
UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1**

Plaintiff, the United States of America, submits this Statement of Undisputed Facts in support of its Motion for Summary Judgment, pursuant to Local Rule 56.1.

1.  In approximately May 2003, agents of the United States Drug Enforcement Administration received information from a reliable confidential source of information ("CS") that Hiram Rodriguez ("Rodriguez"), also known as "Jaramillo," was involved in the distribution of hundred pound quantities of marijuana from Texas to Massachusetts. Rodriguez was also identified by the CS as the principal leader within an organization that was distributing large quantities of marijuana in the Lawrence, Massachusetts, area. Affidavit of Michael O'Shaughnessy ("O'Shaughnessy Affidavit"), at ¶ 5.

2.  Agents learned that another individual by the name of Jesus Castillo ("Castillo"), also known as "Angelo", was also distributing multiple hundred pound quantities of marijuana in the Lawrence area; that Castillo's source of marijuana as

Rodriguez, Jose Dejesus Jaramillo and Peter Kiseskey ("Kiseskey"); and that the Jaramillo brothers (Rodriguez and Jose Dejesus Jaramillo) had delivered multiple hundred pound quantities of marijuana to Castillo from Texas to Massachusetts in the past. In addition, the CS indicated Castillo was involved in the distribution of multiple kilogram quantities of cocaine from the Baltimore, Maryland, area to Massachusetts. O'Shaughnessy Affidavit, at ¶ 6.

3. On or about July 13, 2003, at approximately 11:45 a.m. the CS, acting in undercover capacity, met with Rodriguez and Jose Dejesus Jaramillo (Rodgiguez's brother) in Salem, New Hampshire, to negotiate for the delivery of approximately two hundred sixty-three (263) pounds of marijuana to Castillo later that day. The CS told agents that Jose Dejesus Jaramillo was driving a silver Toyota Tacoma with Texas Registration No. 5TWH98. This vehicle was registered to Hiram Rodriguez of 1132 Geronimo Drive, PMB 321, El Paso, Texas. Agents conducted surveillance of the meeting and the events which occurred following the meeting. O'Shaughnessy Affidavit, at ¶ 7.

4. The CS had received a call from Rodriguez, and, at approximately 11:30 a.m., met with Rodriguez and Jose Dejesus Jaramillo outside Jimmy's Harborside II in Methuen for approximately ten to fifteen minutes. During the meeting, Rodriguez stated that "my uncle" (referring to Kiseskey) would be

arriving in the area in about one hour with the marijuana. Following the meeting, the CS drove Rodriguez to the IHOP in Salem, New Hampshire. Jose Dejesus Jaramillo followed them in the Toyota Tacoma. O'Shaughnessy Affidavit, at ¶ 8.

5. Rodriguez stated that his uncle (Kiseskey) drove from McAllen, Texas, to Massachusetts with the marijuana. The vehicle driven from Texas by Kiseskey was a 2003 white Lincoln, bearing Texas Registration V72FLX, registered to Hertz Vehicles LLC, San Antonio, Texas (hereinafter referred to as the "Lincoln"). O'Shaughnessy Affidavit, at ¶ 9.

6. At approximately 12:54 p.m., agents observed Rodriguez and Jose Dejesus Jaramillo depart the area in the Toyota Tacoma, and also observed the CS leave the area in the CS's vehicle. O'Shaughnessy Affidavit, at ¶ 10.

7. At approximately 1:01 p.m., Salem Police Patrolman Michael Kelly ("Patrolman Kelly") conducted a vehicle stop on the Toyota Tacoma on Route 28 in Salem, New Hampshire. During that time, the driver presented a California driver's license in the name of Jose Dejesus Jaramillo. The passenger presented a New Hampshire driver's license in the name of Hiram Rodriguez. O'Shaughnessy Affidavit, at ¶ 11.

8. In the meantime, during the vehicle stop of the Toyota Tacoma, the CS contacted agents and reported that Jose Dejesus Jaramillo and Rodriguez would be meeting Castillo at Exit 39

(Rte. 133) off of I-495 for the delivery of the marijuana. At that point, agents were dispatched to the area of Rte. 133 and I-495 in Tewksbury, Massachusetts. O'Shaughnessy Affidavit, at ¶ 12.

9. At approximately 1:35 p.m., agents observed the Toyota Tacoma exit I-495 at Rte. 133 and arrive at a McDonald's Restaurant located on Rte. 133, and park near the Lincoln. Shortly thereafter, agents observed the CS and Rodriguez arrive at the McDonalds in the CS's vehicle. O'Shaughnessy Affidavit, at ¶ 13.

10. Once the CS and Rodriguez arrived at the McDonald's Restaurant, Rodriguez pointed to "my uncle," Kiseskey, who was seated in the Lincoln. Kiseskey then exited the Lincoln, entered the Toyota Tacoma, and met with Jose Dejesus Jaramillo. The CS added that Kiseskey had left the keys inside the Lincoln. O'Shaughnessy Affidavit, at ¶ 15.

11. The CS then departed the area with Rodriguez, but Jose Dejesus Jaramillo and Kiseskey drove the Toyota Tacoma from the McDonalds to the Extended Stay Hotel across the street (which was observed by TFA Proulx). At that point, the surveilling agnt noted that Jose Dejesus Jaramillo and Kiseskey appeared to be watching the Lincoln, which remained parked at the McDonald's Restaurant. O'Shaughnessy Affidavit, at ¶ 16.

12. Moments later, a dark skinned male, wearing a white

sleeveless T-shirt, entered the Lincoln and departed the area. The Toyota Tacoma pulled to the rear of the Extended Stay Hotel and parked. Jose Dejesus Jaramillo and Kiseskey then exited the Toyota Tacoma and walked toward the hotel. O'Shaughnessy Affidavit, at ¶ 17.

13.   Agents maintained surveillance on the Lincoln as it drove into Lawrence, Massachusetts. At approximately 1:50 p.m., agents observed the Lincoln arrive at 29/31 Washington Street, Lawrence, Massachusetts, Jesus Castillo's residence. As the Lincoln arrived in front of the residence, a white Nissan, bearing Massachusetts Registration 2705-YE, registered to Jesus Castillo (the "Maxima"), backed out of the driveway to allow the Lincoln to back into the driveway. The Maxima pulled in the driveway, blocking the Lincoln. Shortly thereafter, the driver exited the Lincoln and approached the trunk of the Lincoln, which was open, and meet with the driver of the Maxima. Agents were unable to observe any packages being removed from the Lincoln, but the type of activity the agents observed was consistent with the delivery of marijuana. O'Shaughnessy Affidavit, at ¶ 18.

14.   At approximately 2:03 p.m., the Maxima departed the area, followed by the Lincoln. Agents maintained continuous surveillance on both vehicles. O'Shaughnessy Affidavit, at ¶ 19.

15.   At approximately 2:15 p.m., agents observed the Maxima and the Lincoln arrive at the Mall at Rockingham Park and both

vehicles parked on the second floor lot near Filenes. The driver of the Lincoln exited the vehicle and entered the Maxima, which was being driven by Castillo. Shortly thereafter, the Maxima left the area and agents surveilled it as it returned to Lawrence. Agents for a time lost contact with the Maxima, but finally observed it returning to the residence at 29/31 Washington Street, where Castillo and the unknown male were seen exiting the vehicle and walking toward the residence. O'Shaughnessy Affidavit, at ¶ 20.

16. According to the CS, Castillo had phoned to let the CS know that Castillo had left $12,000 in cash in the glove compartment of the Lincoln, which was parked at the Mall at Rockingham Park near Filenes. The CS explained that the $12,000 represented the first payment to Rodriguez for delivery of the marijuana. The CS stated that the total shipping fee owed to Rodriguez was $30,000. The remaining $18,000 was to be paid the following day. The CS indicated that Rodriguez was to pay Kiseskey $30,000 for driving the marijuana to Massachusetts. O'Shaughnessy Affidavit, at ¶ 21.

17. The CS stated that following the conversation with Castillo, the CS drove Rodriguez to the Mall at Rockingham Park. After walking around the mall for a period of time, Rodriguez entered the Lincoln, removed the $12,000 in the glove compartment, and drove to a hotel on Rte. 28. The CS followed

Rodriguez to the hotel and observed him check in under the name "Rodriguez." The CS indicated that this was a fake name used by "Jaramillo". O'Shaughnessy Affidavit, at ¶ 22.

18. On or about July 15, 2003, the CS, acting in an undercover capacity, met with Castillo in Salem, NH, to negotiate the delivery of $18,000 to Rodriguez. The CS told Castillo to place the $18,000 in the glove box of a vehicle so that Rodriguez could retrieve it later that day, and Castillo agreed. Later that day, the CS reported that it has spoken with Castillo and that the $18,000 was in a black Ford Explorer parked on the second level parking area at the Mall at Rockingham Park. At approximately 2:35 p.m. that same day, the CS reported that Rodriguez had called to advise that he was in possession of "the plates" (referring to the $18,000). Meanwhile, agents conducted video surveillance of Rodriguez, Jose Dejesus Jaramillo and Kiseskey, who were later identified by the CS. O'Shaughnessy Affidavit, at ¶ 23.

19. On or about July 25, 2003, at approximately 11:45 a.m., members of the Massachusetts State Police, agents of the DEA, the Environmental Police, the Lawrence Police Department, and the Essex County Sheriff's Department surveilled an undercover meeting between Rodriguez the CS in connection to the delivery of approximately $79,000 of drug proceeds. This money constituted partial payment for two hundred sixty-three (263) pounds

(approximately 100 kilograms) of marijuana that Rodriguez had delivered to Castillo on or about July 13, 2003.  After several conversations between the parties (which were recorded), the money was delivered to two individuals inside a silver Toyota Tacoma pick-up, bearing New Hampshire License Plate number 4C034 (the "Toyota Tacoma").  O'Shaughnessy Affidavit, at ¶¶ 27-28.

20.  A Massachusetts State Police Trooper stopped the Toyota Tacoma which was being operated by Kiseskey.  Jose Dejesus Jaramillo, seated in the front passenger seat, was the only passenger in the vehicle.  During the stop, the trooper discovered a plastic baggie containing the Defendant Currency which was comprised of large and small denomination U.S. bills.  O'Shaughnessy Affidavit, at ¶ 29.

21.  In response to questions the trooper asked them, Kiseskey and Jose Dejesus Jaramillo each denied ownership of the Defendant Currency and each signed a Record of Investigation form indicating their denial.  The trooper then took custody of the Defendant Currency and issued both Kiseskey and Jose Dejesus Jaramillo a receipt for it.  The Defendant Currency was subsequently transferred to the DEA and was determined to be $78,990 in U.S. currency.  O'Shaughnessy Affidavit, at ¶ 30.

22.  On or about October 23, 2003, the DEA sent notice to Rodriguez, Kiseskey, and Jose Dejesus Jaramillo that the Defendant Currency had been seized pursuant to 21 U.S.C. § 881.

O'Shaughnessy Affidavit, at ¶ 31.

23.  On or about November 10, 2003, the DEA received a claim by Rodriguez, pursuant to 18 U.S.C. § 983(2)(A), dated November 5, 2003.  Neither Kiseskey nor Jose Dejesus Jaramillo filed a claim for the Defendant Currency.  O'Shaughnessy Affidavit, at ¶ 32.

24.  On or about December 23, 2003, the CS received an incoming phone call from Rodriguez, during which Rodriguez discussed with the CS the delivery of "quince aparatillos" (fifteen apparatuses).  The CS understood Rodriguez to be referring to fifteen kilograms of cocaine.  Rodriguez stated that the product was close by, and that the owners were willing to meet with the CS to discuss payment and delivery.  This conversation was recorded.  O'Shaughnessy Affidavit, at ¶ 33.

25.  On or about January 27, 2004, the CS called Rodriguez to negotiate the delivery of the fifteen kilograms of cocaine. During that conversation, Rodriguez told the CS that the owner was unable to deliver the cocaine on consignment.  Rodriguez indicated, however, that he had another source who was willing to deliver "cars" to the CS on consignment.  The CS understood "cars" to be a reference to kilograms of cocaine.  Rodriguez told the CS that he would meet with the CS in the near future, and explained that his "friend" would come along in order to meet the CS.  Rodriguez instructed the CS to be ready for his call.  The

CS told Rodriguez they had to get active soon in order to compensate for their financial losses from Castillo's unpaid debt for the two hundred sixty-three pounds of marijuana, delivered to him in July (the Defendant Currency).  O'Shaughnessy Affidavit, at ¶ 34.

                                      Respectfully submitted,

                                      MICHAEL J. SULLIVAN
                                      United States Attorney

                               By:  /s/ Shelbey D. Wright
                                      Shelbey D. Wright
                                      Assistant U.S. Attorney

Dated:  January 18, 2005